JENNINGS v SOUTHWOOD (AFTER REMAND)

Docket No. 187103. Submitted November 19, 1996, at Grand Rapids. Decided May 30, 1997, at 9:20 A.M. Leave to appeal sought.

Dean S. Jennings, as conservator of the estate of Cynthia K. Rasmussen, brought an action in the Berrien Circuit Court against Richard J. Southwood and other emergency medical services personnel, Lake Township, and Lake Township Ambulance Rescue, alleging that the refusal of EMS personnel to transport Rasmussen to the hospital resulted in her slipping into a continuing diabetic coma. The court, John T. Hammond, J., dismissed the municipality from the action, holding that governmental immunity prevents a finding of vicarious liability. A jury returned a verdict in favor of the remaining defendants. The Court of Appeals, GRIFFIN, P.J., and NEFF and CORRIGAN, JJ., affirmed, holding that the plaintiff failed to demonstrate gross negligence as defined in *Gibbard v Cursan*, 225 Mich 311 (1923), thereby rendering the defendants immune from suit under the emergency medical services act, MCL 333.20737; MSA 14.15(20737). The Court of Appeals also held that the trial court erred harmlessly in using criminal examples of gross negligence to instruct the jury about gross negligence and in dismissing the municipality on governmental immunity grounds. 198 Mich App 713 (1993). The Supreme Court overruled *Gibbard*, vacated the judgment of the Court of Appeals, and remanded the case to the Court of Appeals for further consideration of whether the trial court's errors of dismissing the municipality on governmental immunity grounds and of using criminal examples of gross negligence were harmless. 446 Mich 125 (1994). The Court of Appeals issued an order on November 30, 1994, remanding the case to the trial court to allow the plaintiff to move for a new trial in light of the Supreme Court's decision. The plaintiff moved for a new trial on the basis of instructional error. The defendants moved for summary disposition, arguing that the evidence produced at trial showed that Rasmussen intentionally administered an overdose of insulin to herself after the EMS personnel refused to transport her to the hospital and that they are not under a legal duty to prevent self-inflicted injury. The trial court denied both motions.

After remand, the Court of Appeals *held*:

1. In instructing the jury about gross negligence, the trial court correctly defined "gross negligence" as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results, but confused the jury when it gave misleading examples of gross negligence and when it defined "reckless" in a manner that indicated that the plaintiff had to prove that the EMS personnel were aware of and consciously disregarded a substantial and unjustifiable risk of serious harm. A person's conduct, not mental state, is the focus of inquiry in determining whether the person has been grossly negligent. The trial court's definition of "reckless" required the plaintiff to prove mental state, was therefore erroneous, and, along with the misleading examples of gross negligence, prejudiced the defendant such that a new trial is required. The trial court's denial of the plaintiff's motion for a new trial is reversed.

2. The dismissal of the municipality on governmental immunity grounds cannot be considered harmless in light of the instructional error.

3. The arguments raised in the defendants' motion for summary disposition were not properly before the trial court following remand by the Court of Appeals and are not properly before the Court of Appeals in this appeal after remand. The arguments should have been raised initially either before trial or at the time the defendants moved for a directed verdict. The trial court did not err in denying the defendants' motion for summary disposition.

Reversed in part, affirmed in part, and remanded for a new trial.

*Michael D. Marrs*, for the plaintiff.

*Cummings, McClorey, Davis, Acho & Tremp, P.C.* (by *Richard H. Winslow*), for the defendants.

AFTER REMAND

Before: REILLY, P.J., and MACKENZIE and B. K. ZAHRA*, JJ.

PER CURIAM. This malpractice case involving emergency medical technicians is before this Court for a third time. Plaintiff Dean S. Jennings, as conservator of the estate of Cynthia K. Rasmussen, appeals as of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

right a circuit court order denying his motion for a new trial on the basis of the court's conclusion that any error in the jury instructions used at trial was harmless and did not result in substantial injustice. Defendants cross appeal as of right from the same order, which also denied defendants' motion for summary disposition because the court concluded that plaintiff presented sufficient facts to permit the jury to decide the case. We reverse in part, affirm in part, and remand for a new trial.

The underlying facts of the case are summarized in this Court's previous opinion, *Jennings v Southwood*, 198 Mich App 713, 716-717; 499 NW2d 460 (1993) (*Jennings I*), and the Supreme Court's opinion, *Jennings v Southwood*, 446 Mich 125; 521 NW2d 230 (1994) (*Jennings II*), in which the Supreme Court vacated this Court's opinion. The Supreme Court summarized the facts and procedural history of the case as follows:

> The plaintiff filed suit in the Berrien Circuit Court on January 15, 1988, against defendant Lake Township Municipality, its ambulance service, Lake Township Ambulance and Rescue, and the individual EMS personnel, Richard Southwood, and Bill Boyd, seeking damages for gross negligence. The plaintiff's key allegation is that the defendants refused to transport thirteen-year-old Cynthia Rasmussen, a diabetic and epileptic, to the hospital on November 25, 1986. As a result of the defendants' refusal, Cynthia slipped into a diabetic coma later that evening and has been unconscious ever since.

> By October 1988, the trial court dismissed the municipality, holding that it could not be vicariously liable on grounds of governmental immunity. During the subsequent jury trial, the trial court instructed the jury about gross neg-

ligence using the GTLA[1] definition. During the instruction, the court gave examples of gross negligence in the context of the criminal law. Plaintiff's counsel specifically objected to the use of such examples.

Following deliberations, the jury reached a verdict of no cause of action, and the trial court denied the plaintiff's motion for a new trial. The plaintiff filed an appeal of right in the Court of Appeals, alleging two errors: (1) an instructional error concerning the use of criminal examples to demonstrate civil gross negligence, and (2) an error regarding the trial court's grant of summary disposition to the municipality on the grounds of governmental immunity.

The Court of Appeals issued a per curiam opinion, affirming the judgments for the defendants on the basis of an issue that it raised sua sponte and resolved against the plaintiffs. 198 Mich App 713; 499 NW2d 460 (1993). Because the plaintiff failed to plead and prove that Cynthia was negligent before the defendants' negligence, the plaintiff failed to demonstrate gross negligence as defined in *Gibbard*[2], rendering the defendants immune from suit under the EMSA[3]. The majority also concluded that the trial court erred in using criminal examples of gross negligence and dismissing the municipality on governmental immunity grounds; it held, however, that these errors were harmless in light of plaintiff's failure to plead and prove gross negligence pursuant to *Gibbard*. [*Id.* at 147-148.]

In *Jennings II*, the Supreme Court overruled *Gibbard*, thus eliminating the legal foundation of this Court's conclusion in *Jennings I* that the instructional error and grant of summary disposition in favor of the municipal defendants were harmless. The Court then addressed two remaining issues, which it character-

---

[1] Governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*

[2] *Gibbard v Cursan*, 225 Mich 311; 196 NW 398 (1923).

[3] The emergency medical services act applicable to this action was found at MCL 333.20701 *et seq.*; MSA 14.15(20701) *et seq.* See *Jennings II*, at 128, n 1.

ized as follows: "(1) whether governmental immunity under the GTLA bars suit against the defendant municipality, and (2) whether the trial errors regarding the use of criminal examples for gross negligence and the dismissal of the defendant municipality require a new trial." *Jennings II, supra* at 148. With respect to the first issue, the Court "affirm[ed] the holding of the Court of Appeals that the dismissal of the defendant municipality on grounds of governmental immunity was erroneous." *Id.* at 150. With respect to the second issue, the Court reasoned:

> While the Court of Appeals determined that the trial court erred in granting summary disposition to the municipality and in using criminal examples in its instructions regarding gross negligence, the panel nevertheless determined that the error was harmless in light of the plaintiff's failure to prove *Gibbard*'s gross negligence. Given that the justification can no longer support this conclusion, we vacate the judgment of the Court of Appeals. We remand the case to that Court for further consideration of whether the errors were harmless. [*Id.*]

This Court remanded the case to the trial court to "allow plaintiff-appellant to move for a new trial in light of [*Jennings II*]." *Jennings v Southwood*, unpublished order of the Court of Appeals, entered November 30, 1994 (Docket No. 178564).

Following remand to the circuit court, plaintiff moved for a new trial on the basis of instructional error. Defendants moved for summary disposition, claiming that plaintiff had failed to prove that Cynthia had not overdosed on insulin after the EMS personnel left on the evening of November 25, which defendants asserted entitled them to judgment as a matter of law. The trial court denied plaintiff's motion, concluding

that the instructional error was harmless because it did not confuse or mislead the jury. The court also denied defendants' motion on the ground that plaintiff had produced sufficient evidence to escape a directed verdict and to take the case to the jury.

Plaintiff now contends that only a new trial can cure the trial court's instructional error because the instructions so confused and misled the jury that a substantial injustice occurred in this case. Plaintiff asserts that the instructions misled the jurors into believing that they had to find that defendants had committed a crime in order to find that defendants had been grossly negligent and that the instructions confused the jurors with respect to whether plaintiff's burden of proof was by a preponderance of the evidence or beyond a reasonable doubt. We agree with plaintiff that the trial court erred in denying plaintiff's motion for a new trial.

The trial court instructed the jury that the EMS personnel could be held liable for Cynthia's injuries only if they had been grossly negligent, which the court defined as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted. That portion of the instruction was accurate. *Jennings II*, at 136. However, the court proceeded to illustrate the differences between unintentional acts, negligence, gross negligence, and intentional acts, by providing the following examples and explanations:

> In general, physical acts by human beings have different legal significance, depending on the presence or absence of culpable mental state by the actor at the time of the doing of the act. For example, if someone lives in a highrise building, with a public sidewalk right beside the building, and deliberately drops a heavy chair on a person standing on

the sidewalk below, without justification or excuse, and kills the victim, that would be murder, (as well as leading to a civil suit for damages for assault and battery).

If that same person, stubbed his toe, got mad, picked up the chair, and threw it across the room, through the window, falling onto the same victim with the same fatal results, this grossly negligent, or reckless, act would be manslaughter (as well as leading to a civil action for damages).

If that same person is carrying the heavy chair next to a balcony railing, without looking where he is going, knowing that there are childrens [sic] toys all over the floor, and steps on a toy and falls down, thereby dropping the chair over the railing, with the same fatal results to the fellow on the sidewalk, we have no crime, (though a civil suit for negligence would follow).

If lightening [sic] strikes the building and the person carrying the chair is shocked and falls against the window and drops the chair through the window onto the poor fellow below, with the same fatal results, we have no crime, and no civil suit, but rather only an accident or an "act of God" for which no one is liable.

In general the law recognizes several different levels of culpability. The first of these, the lowest level of culpability ordinarily required for legal liability, is negligence. When I use the word negligence, I mean, the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do, under the circumstances you find existed in the case. It is for you to decide what a reasonably careful person would do or would not do under such a circumstance.

The next higher level of culpability is referred to as gross negligence. I instruct you that it is the law of this state that gross negligence means: conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. I will repeat, gross negligence means: conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. The term reckless means being aware of, and consciously disregarding, a substantial and

unjustifiable risk of serious harm. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

We are not bound by this Court's earlier decision in *Jennings I, supra,* that the trial court erred in instructing the jury with examples taken from the criminal law because the Supreme Court vacated this Court's opinion. *Jennings II, supra* at 150. However, the Supreme Court implicitly agreed with this Court's determination that the instructions were erroneous when it remanded the case to this Court "for further consideration of whether the errors were harmless." *Id.*

Therefore, we first consider the issue assigned to this Court by the Supreme Court in *Jennings II,* i.e., whether the instructional error was harmless. Jury instructions must be reviewed in their entirety, rather than on a piecemeal basis. *Mull v Equitable Life Assurance Society of the United States,* 196 Mich App 411, 423; 493 NW2d 447 (1992), aff'd 444 Mich 508; 510 NW2d 184 (1994). Instructional error is harmless unless the error results "in such unfair prejudice to the complaining party that failure to vacate the jury verdict would be 'inconsistent with substantial justice.'" *Johnson v Corbet,* 423 Mich 304, 326; 377 NW2d 713 (1985), quoting MCR 2.613[A].

Under MCR 2.516(D)(4), a trial court may give additional instructions concerning an area that was not covered in the standard jury instructions as long as these additional instructions accurately state the law and are applicable, concise, understandable, conversational, unslanted, and nonargumentative. *Mull, supra* at 422. If the instructions confused the jury to

the extent that the parties' theories and the applicable law were not fairly and adequately presented to the jury, then a new trial must be granted. *Mills v White Castle Systems, Inc*, 199 Mich App 588, 591; 502 NW2d 331 (1992).

The illustrations used and the inclusion of the definition of "reckless" did not fairly present the law to the jury and unfairly prejudiced plaintiff. The trial court instructed the jury with the correct definition of gross negligence—conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. *Jennings II*, at 136-137. However, the examples and the definition of "reckless" provided to the jury had the potential of misleading the jury with respect to plaintiff's burden of proof. First, the examples each involved affirmative conduct by the actor, in contrast to the failure to act that was the basis of the complaint in this case. The example given for gross negligence, a person getting angry and throwing a chair over the balcony of a high-rise building, suggests a higher level of culpable conduct than is actually necessary for plaintiff to prevail.

The misleading nature of the examples included in the instructions was compounded by inclusion of the definition of "reckless."[4] By providing a definition of a term used in the definition of gross negligence, the court added an additional element to plaintiff's burden of proof. The correct definition of gross negligence indicates that plaintiff must prove conduct so reckless that the conduct shows a substantial lack of

---

[4] Although plaintiff did not specifically object to this part of the instruction, we examine it as part of the context in which the objected-to instruction was given in order to determine whether the instructions as a whole fairly presented the applicable law to the jury.

concern for whether an injury results. The definition of gross negligence does not require proof of the mental state of the actors. The focus is on conduct, and the jury is asked to determine whether the conduct indicates a substantial lack of concern whether an injury will result. However, by defining the term "reckless," the trial court indicated that plaintiff was required to prove that the EMS personnel were "aware of, and consciously disregard[ed] a substantial and unjustifiable risk of serious harm." This instruction suggests that plaintiff was required to prove the mental state of the EMS personnel, e.g., awareness of the risk and conscious disregard of the same. This unfairly added a subjective element to plaintiff's burden of proof. Furthermore, the definition of reckless given by the court required plaintiff to show a greater level of harm than that required by the definition of gross negligence. The latter refers to lack of concern whether "an injury" results. The definition of "reckless" provided by the court refers to disregarding a "substantial and unjustifiable risk of serious harm."

When one attempts to incorporate the court's definition of "reckless" into the "conduct so reckless . . ." part of the definition of gross negligence, it is unclear what plaintiff was required to prove. Reckless conduct or a reckless mental state? Conduct showing a lack of concern about whether an injury will result or an actual awareness and disregarding of a risk of serious harm? The jury appears to have experienced confusion with regard to this issue, as indicated by the note it sent out during deliberations. The note queried, "Are we to prove gross negligence only?" The

court directed the jury to re-examine the written copy of the instructions that was provided to it.[5]

Having reviewed the instructions in their entirety, we are persuaded that the instructional error is sufficiently prejudicial as to undermine confidence in the jury's verdict. Gross negligence is a critical issue in this case. A jury cannot fairly and intelligently decide whether defendants were grossly negligent when the jury is confused or misled regarding what constitutes gross negligence. The instructional error was not harmless, and consequently, plaintiff is entitled to a new trial with appropriate instruction so that the jury may fairly and intelligently determine whether defendants were grossly negligent. The trial court abused its discretion when it denied plaintiff's motion for a new trial. *Goins v Ford Motor Co*, 131 Mich App 185, 195-198; 347 NW2d 184 (1983). The portion of the court's order denying plaintiff's motion for a new trial is reversed.

In *Jennings II*, the Supreme Court also directed us to consider whether the court's error in the dismissal of the defendant municipality was harmless. The Supreme Court specifically affirmed this Court's holding "that the dismissal of the municipality on grounds of governmental immunity was erroneous." *Jennings II*, at 150. Given our resolution of the instructional error issue, the dismissal of the municipality cannot be considered harmless error. The ruling of the trial court granting dismissal is, therefore, reversed.

---

[5] The lower court record includes the jury's copy of the instructions. On that copy, the phrase, "The term reckless means being aware of, and consciously disregarding" is underscored twice in pencil, presumably by a member of the jury.

Next, we consider defendants' cross appeal, which challenges the trial court's denial of their motion variously characterized as a summary disposition motion pursuant to MCR 2.116(C)(10) and as a motion for reconsideration of the motion for a directed verdict made at trial. The motion was filed after this Court's remand to the circuit court, which was to "allow plaintiff-appellant to move for a new trial in light of [*Jennings II*]." In their motion, defendants argued that the evidence produced at trial showed that Cynthia must have self-administered an intentional insulin overdose after the EMS personnel treated Cynthia the first time and left without transporting her to the hospital. Defendants contended that they have no legal duty to prevent self-inflicted injury and that public policy precludes lawsuits for failure to prevent self-inflicted injuries. The trial court denied defendants' motion and concluded that the case was properly submitted to the jury. On cross appeal, defendants argue that the trial court erred in not granting their motion. We affirm the portion of the court's order denying defendants' motion, but for a different reason.

Defendants' arguments were not properly before the circuit court following this Court's remand order and are not properly before this Court in this appeal following remand. The issues defendants seek to raise should have been raised first either before trial or at the time defendants moved for a directed verdict. Then, if defendants wanted to challenge the circuit court's ruling, the issues could have been raised by way of a cross appeal at the time plaintiff first appealed the judgment. Defendants did not raise these arguments before the trial court before or dur-

ing trial,[6] nor did they claim a cross appeal when this case first came before this Court in *Jennings I*. The Supreme Court's opinion indicates that the issues presented here were also not raised in defendants' cross appeal in *Jennings II*. The purpose of the Supreme Court's remand to this Court and this Court's remand to the circuit court was to provide an opportunity to assess whether the instructional error and dismissal of the municipal defendant were harmless, not to give defendants an opportunity to raise issues that they neglected to raise in the earlier proceedings. Because defendants failed to raise the issues before the circuit court before or at trial or in the original appeal, and because the motion was outside the scope of this Court's order remanding the case to the circuit court, the circuit court did not err in denying defendants' motion. See *VanderWall v Midkiff*, 186 Mich App 191, 196-202; 463 NW2d 219 (1990).

Reversed in part, affirmed in part, and remanded for a new trial. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

---

[6] When defendants moved for a directed verdict, they argued that plaintiff had not established gross negligence by a preponderance of the evidence. Following the close of proofs, defendants renewed their motion and argued that if Cynthia overdosed after the EMT personnel left, there would be "no proximate cause, because it would not be reasonably foreseeable or natural and probable because [sic] not transporting that she should have overdosed." These arguments differ from those presented to the trial court following remand.